IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TARA WILLIAMS,                      :    CIVIL ACTION
                                    :    NO. 10-4834
          Plaintiff,                :
                                    :
     v.                             :
                                    :
MERCY HEALTH SYSTEM, et al.,        :
                                    :
          Defendants.               :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            MARCH 30, 2012


## I. INTRODUCTION

Plaintiff Tara Williams ("Plaintiff") brings this employment discrimination suit pursuant to 42 U.S.C. § 1981 against Defendants Mercy Health System and Mercy Home Health Services ("Defendants").  Plaintiff's Complaint contains three counts:  (1) Count I — wrongful termination based on retaliation; (2) Count II — wrongful termination based on racial discrimination; and (3) Count III — hostile work environment.  Defendants answered denying all averments and asserting a variety of affirmative defenses.  Currently before the Court is Defendants' Motion for Summary Judgment.  ECF No. 39.

For the reasons set forth below, the Court will deny Defendants' Motion.

**II.   BACKGROUND**[1]

      A.   Factual Background

      Plaintiff is an African-American female who commenced employment with Defendants on or about April 28, 2008, working as an Admission Nurse.  Am. Compl.  ¶¶ 13, 14, 16.  Defendants originally hired Plaintiff for the Suburban Home Health branch.  Plaintiff's direct supervisor there was Linda Gusenko.  Id. ¶ 19.  In December 2008, Defendants transferred Plaintiff to the St. Mary branch, according to Defendants, because that branch needed additional staff.  Defs.' Br. in Supp. of Mot. for Summ. J. 2, ECF No. 39 [hereinafter Defs.'s Br.].  While there, Plaintiff's supervisor was Betsy Bullard.  Plaintiff testified that Ms. Bullard stated to Plaintiff and her sister the following: "You people cannot just be rolling out of bed at 12:00, you people cannot just be lazy . . . ."  Williams Dep. 111:5-6, May 19, 2011, Pl.'s Br. in Opp'n to Defs.' Mot for Summ. J. Ex. A, ECF No. 42 [hereinafter Pl.'s Br.].  Plaintiff's time at the St. Mary branch was short lived; Defendants transferred Plaintiff back to her original Suburban Home Health branch before the end of 2008.  Id. at 113:8-22.

---

[1]     In accordance with the appropriate standard of review, see infra, at III(A), the facts in this section are viewed in the light most favorable to Plaintiff.

When back at the Suburban Home Health Branch, Diane Guzzardo also supervised Plaintiff on an interim basis when Ms. Gusenko was absent.  Gusenko Dep. 14:14-17, May 17, 2011, Pl.'s Br. Ex. B.  Defendants contend that they eventually terminated Plaintiff on May 11, 2010, for allegedly falsifying a mileage reimbursement report and for falsifying medical records.  Defs.' Br. 9.

During her approximately two years of employment, Plaintiff alleges Defendants participated in various acts of race discrimination.  Plaintiff testified that Ms. Gusenko and Ms. Guzzardo would change Plaintiff's schedule without giving her notice.  Williams 365:16-366:14.  Plaintiff also compared her schedule to Caucasian nurses; Plaintiff contends those nurses were not subject to such changes.  Id. at 366:15-368:17. Plaintiff testified that Defendants treated her differently than Caucasian nurses because Plaintiff had to report to work before seeing her first patient and had to use her vacation time if there was insufficient work.  Id. at 374:10-23.  Plaintiff testified that as early as December 2008 she informed her direct supervisor, Ms. Gusenko, about this alleged discrimination, but Ms. Gusenko also did not take steps to prevent or ameliorate this alleged discrimination other than speak with Ms. Guzzardo. Id. at 121:2-19; see also Gusenko Dep. 21:14-22:6 (acknowledging that Plaintiff complained she was being singled out).

3

Similarly, Plaintiff testified that Jennifer O'Connell, the head of human resources, knew about Plaintiff's complaints, yet did nothing to ameliorate the problem.  Williams Dep. 134:20-136:4.

In addition to this alleged disparate treatment, Plaintiff testified about Ms. Guzzardo's various acts of alleged discriminatory conduct toward her.  Plaintiff testified that, during a March 2010 telephone call, Ms. Guzzardo referred to herself in ethnic terms, calling herself a "Guido" and telling Plaintiff that she would "take care of" Plaintiff.  Id. at 75:15-16.  Plaintiff believed this was a physical threat, as she understood a "Guido" to be someone with mafia connections.  Id. at 72:17-73:5.  Plaintiff testified that during this conversation Ms. Guzzardo called Plaintiff a "coon" and a "nigger."[2]  Id. at 89:5-90:21.  In addition, Plaintiff testified that Ms. Guzzardo also called Plaintiff a "nigger" on one other occasion.  Id. at 93:8-94:5.  Finally, Plaintiff testified that Ms. Guzzardo told Plaintiff to "stay in her place."  Id. at 73:6-13.

Plaintiff brought all of these alleged acts of harassment and discrimination to the attention of Ms. Gusenko, but contends that Ms. Gusenko took no action.  Id. at 95:18-97:5.  Plaintiff eventually informed Ruth Martynowicz, vice

_____

[2]    Although the Court does not condone the use of the word "nigger," it includes the term here because it is an important allegation in this case.

president of operations, of this alleged harassment.
Martynowicz Dep. 35:10-23, May 23, 2011, Defs.' Br. Ex. C.  Ms.
Martynowicz testified that she told Plaintiff to bring her
complaints to her supervisor.  Id. at 35:23-36:3.

Plaintiff again complained to Ms. Gusenko in April
2010 about Ms. Guzzardo.  Plaintiff told Ms. Gusenko that she
planned to file a charge with the U.S. Equal Employment
Opportunity Commission ("EEOC") regarding Ms. Guzzardo's
harassment and discriminatory treatment.  Williams Dep. 286:7-
288:1.  Plaintiff did contact the EEOC in April 2010, and filed
an official questionnaire on April 26, 2010.  See Pl.'s Br. Ex.
H.

On May 3, 2010, Plaintiff met with Ms. Martynowicz,
Ms. Gusenko, and Ms. O'Connell, to discuss Plaintiff's work
performance.  Ms. Martynowicz told Plaintiff that they believed
Plaintiff falsified her mileage reimbursement reports for her
travel.  Martynowicz Dep. 105:16-23.  In addition, Ms.
Martynowicz informed Plaintiff of alleged patient mistreatment
and falsification of medical records.  In particular, Plaintiff
allegedly failed to take a patient's blood pressure, but noted
that she did take the patient's blood pressure on the patient's
chart.  Id. at 38:23-41:17.  Moreover, Plaintiff allegedly had a
patient admitted to a hospital for further medical care, but

never documented this fact on that patient's record.  Id. at
40:20-41:10.

Plaintiff attempted to refute or offer explanations
for each of these alleged incidents, but Ms. Martynowicz
alledgedly prevented Plaintiff from offering such explanations.
Williams Dep. 229:12-230:11.  Plaintiff also allegedly belched
and spit during this meeting, though Plaintiff denies she acted
in this way.  Id. at 281:3-283:1.  Plaintiff also testified that
during her performance meeting either Ms. Gusenko or Ms.
O'Connell muttered the word "niggers."  Id. at 237:7-239:21.
Following this meeting, Defendants terminated Plaintiff's
employment and replaced her with a Caucasian nurse.  See
Martynowicz Dep. 47:13-17.  Following her termination, Plaintiff
brought the instant lawsuit.


B.   <u>Procedural History</u>

Plaintiff filed her Complaint on September 20, 2010.
ECF No. 1.  Defendants moved to dismiss Count III of Plaintiff's
Complaint — her claim of a hostile work environment.  Defs.'
Mot. to Dismiss 1, ECF No. 8.  The Court granted Defendants'
Motion, but granted Plaintiff leave to amend her Complaint.
Order, Dec. 13, 2010, ECF No. 20.  Plaintiff duly filed her
Amended Complaint on January 6, 2011.  ECF No. 22.  Defendants
filed an answer to Plaintiff's Amended Complaint denying all

averments and asserting a variety of affirmative defenses.  ECF
No. 25.  After the close of discovery, Defendants filed a Motion
for Summary Judgment on all counts, and Plaintiff responded in
opposition.  Defendants' Motion is now fully briefed and ripe
for disposition.

## III. DISCUSSION

    A.   <u>Legal Standard</u>

      Summary judgment is appropriate if there are no
genuine disputes of material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
"A motion for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact."  <u>Am. Eagle Outfitters v.
Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)).
A fact is "material" if proof of its existence or non-existence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S.
at 248.

      In undertaking this analysis, the court views the
facts in the light most favorable to the non-moving party.

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.

    B.    Application

        Plaintiff brings three distinct claims against Defendants pursuant to § 1981.  Plaintiff alleges Defendants discriminated against her during her employment and fired Plaintiff because of her race.  She alleges that Defendants fired her in retaliation for complaining about the alleged discrimination.  And, Plaintiff alleges that she was subject to a hostile work environment.  Defendants moved for summary judgment on each of Plaintiff's claims.  The Court addresses each claim in turn.

1.   Discrimination Pursuant to § 1981

Section 1981 states that all persons have the right to make and enforce contracts to the same extent that right "is enjoyed by white citizens."  42 U.S.C. § 1981 (2006).  Thus, § 1981 prevents discrimination in the making of contracts.  Brown v. Philip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001).  And, Courts analyze claims of discrimination pursuant to § 1981 under the same standard as Title VII.  See Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009).  Under this standard, an employer who discriminates does not typically disclose a discriminatory animus; therefore, the Supreme Court created a modified burden shifting analysis to allow plaintiffs to bring discrimination claims even though they lack direct proof of discrimination.  See Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999).  Under this analysis, each plaintiff carries the initial burden and must establish a prima facie case of racial discrimination by a preponderance of the evidence.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2009).

Once the plaintiff establishes the prima facie case, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"  Id. (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  Although the burden of production shifts to the defendant, "the ultimate burden of persuading the trier

of fact that the defendant intentionally discriminated against
the plaintiff remains at all times with the plaintiff."  St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)
(alteration and internal quotation marks omitted).  If the
employer puts forth a legitimate nondiscriminatory reason, the
presumption of discrimination raised by plaintiff's prima facie
case is rebutted, and "[t]he plaintiff then must establish by a
preponderance of the evidence that the employer's proffered
reasons were merely a pretext for discrimination."  Sarullo, 352
F.3d at 797.


                    a.    The Prima Facie Case

          Whether a plaintiff has established a prima facie case
is a question of law.  Id.  Establishing a prima facie case
requires the plaintiff to show: "(1) [he/she] belongs to a
protected class; (2) he/she was qualified for the position; (3)
he/she was subject to an adverse employment action despite being
qualified; and (4) [this occurred] under circumstances that
raise an inference of discriminatory action."  Id.  Defendants
do not dispute at this stage that Plaintiff established her
prima facie case.  Defs.' Br. 11.


                              10

b.   Legitimate Nondiscriminatory Reason

Once a plaintiff establishes a prima facie case, a presumption of discrimination arises.  This presumption is rebutted if the defendant "articulate[s] some legitimate, nondiscriminatory reason for the employee's [termination]." McDonnell, 411 U.S. at 802.  This burden of production rests on the defendant and is a low standard.  See Iadimarco, 190 F.3d at 157 ("[T]he defendant need not persuade the court that it was actually motivated by the proffered reasons." (internal quotation marks omitted)).  "The defendant satisfies its burden at this step by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable [action]." Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 271 (3d Cir. 2010) (alteration in original) (citation and internal quotation marks omitted).

Defendants put forth evidence of legitimate nondiscriminatory reasons for Plaintiff's termination. Specifically, Defendants contend that they terminated Plaintiff because they believed she falsified patient records and mileage reimbursement reports.  Plaintiff argues that Defendants' nondiscriminatory reasons are a pretext for discrimination.

c.   <u>Pretext</u>

After a defendant offers a legitimate non-discriminatory reason for termination, "the presumption raised by the prima facie case . . . drops from the case." <u>St. Mary's Ctr.</u>, 509 U.S. at 507 (citation and internal quotation marks omitted).  At the summary judgment stage the plaintiff need not prove her case of discrimination, but "'must point to some <u>evidence</u>, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  <u>Iadimarco</u>, 190 F.3d at 165-66 (emphasis in original) (quoting <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994)).  In other words, the plaintiff must provide evidence to "allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action."  <u>Id.</u> at 166 (omission in original) (citation and internal quotation marks omitted).  The burden of persuading the trier of fact that the alleged acts constituted unlawful discrimination remains with the plaintiff.  <u>See</u> <u>St. Mary's Ctr.</u>, 509 U.S. at 507 (discussing burdens under <u>McDonnell Douglas</u> analysis).

Defendants contend that Plaintiff failed to take the blood pressure of a patient, but recorded that she did take that blood pressure.  Defs.' Br. 13; Martynowicz Dep. 39:5-40:11. Moreover, Ms. Guzzardo spoke directly to the patient and the patient's husband about the incident and confirmed that Plaintiff did not take the patient's blood pressure.  Finally, as Plaintiff did not seek discovery from the patient or the patient's husband, Plaintiff thus "all but concedes the honesty of [Defendants'] belief that [Plaintiff] falsified patient records."  Defs.' Br. 13.

In response, Plaintiff contends that she did take the patient's blood pressure.  Moreover, Plaintiff's deposition testimony states explicitly her belief that any report from the patient to the contrary was fabricated.[3]  Williams Dep. 266:14-268:2.  Plaintiff buttresses this contention by arguing that she had a history of providing professional care to her patients. Specifically, Plaintiff argues that "[i]t is simply not believable that a registered nurse, who had been employed with Defendants for two years and received favorable performance evaluations, would neglect to take a patient's blood pressure." Pl.'s Br. 20.  Moreover, Plaintiff argues that the patient's

---

[3]     Plaintiff notes that it was Ms. Guzzardo that investigated Plaintiff's alleged failure to take a blood pressure reading.  Thus, Plaintiff argues, as Ms. Guzzardo already showed racial animus toward Plaintiff, Ms. Guzzardo fabricated this incident and reported it back to Ms. Gusenko.

alleged complaint occurred on April 9, 2010, but Defendants did not confront Plaintiff with this complaint until May 3, 2010. Thus, Plaintiff argues, if her alleged failure to take the patient's blood pressure was egregious enough to warrant termination, why did Defendants not confront her sooner?  Id.

The Court finds that Plaintiff put forth enough evidence to satisfy her burden on summary judgment with respect to pretext for the falsified medical records.  The evidence of records shows that a reasonable jury could conclude that Defendants' proffered reason for termination — falsifying a blood pressure reading — is false.[4]  Specifically, by directly contradicting Defendants with respect to whether or not she took the reading and by providing evidence of Plaintiff's past performance, Plaintiff has shown "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [] [Defendants'] proffered legitimate reasons" to the extent that "a reasonable factfinder could rationally find them unworthy of credence."  Fuentes, 32 F.3d at 765 (emphasis in original) (citation and internal quotation marks omitted).

With respect to Plaintiff's alleged mileage falsification, Defendants argue that Plaintiff's mileage

---

[4]     Defendants also put forward evidence that Plaintiff was disciplined on several occasions during her first six months of employment for various performance reasons.  See Defs.' Br. 2-3.  Yet, Defendants do not argue that Plaintiff's termination was in any way affected by these previous performance problems.

documentation shows that she conducted five patient
appointments, traveled ninety-five miles, all before 11:15 A.M.
Defendants assert that as each patient appointment takes one to
two hours, it would be impossible for Plaintiff to conduct five
appointments and travel ninety-five miles in one morning.
Therefore, Defendants contend, Plaintiff must have falsified her
mileage reimbursement reports.

Plaintiff responds and explains that Defendants'
patient list did not include additional patients that Plaintiff
visited that same day.  Plaintiff contends that Defendants
rerouted Plaintiff and added to her patient list.  Thus,
Defendants knew about the additional mileage.  Moreover, there
were also additional patients whose homes Plaintiff drove to,
but who were unavailable.  While Plaintiff recorded the mileage
for these drives, she did not record the patients.  Finally,
Plaintiff testified that she also drove back to the office
between seeing patients.  All of these facts, according to
Plaintiff, account for the large amount of mileage on her
report.  At the May 3, 2010, disciplinary meeting Plaintiff
attempted to offer the above explanation, but was not permitted.[5]

---

[5]       Defendants contend that they fired a Caucasian nurse
for falsifying medical records.  Plaintiff argues that that
nurse never showed up for a disciplinary meeting to refute
Defendants' claims against her.  This alleged comparator holds
no weight for the Court, as it views the facts in the light most
favorable to Plaintiff.

Plaintiff's evidence shows "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [] [Defendants'] proffered legitimate reasons" to the extent that "a reasonable fact finder could rationally find them unworthy of credence."  Id. (emphasis in original).  Therefore, Plaintiff has produced sufficient evidence "from which a fact finder could reasonably . . . disbelieve [Defendants'] articulated legitimate reasons."  Iadimarco, 190 F.3d at 165-66.

          Moreover, Plaintiff offers evidence of racial animus in the form of stray remarks allegedly spoken by supervisors. Specifically, Plaintiff testified that Ms. Guzzardo, in 2009, called Plaintiff a "coon" and a "nigger."  Williams Dep. 89:5-90:21.  And, Plaintiff testified that Ms. Guzzardo called her a "nigger" again in March 2010.  Moreover, Plaintiff testified that during her termination meeting on May 3, 2010, either Ms. Gusenko or Ms. O'Connell muttered the word "niggers."  Stray remarks of racial animus may be probative of discrimination. When considering their probative value, the Court considers three factors: (1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the purpose and content of the statement; and (3) the temporal proximity of the statement to the adverse employment decision.  Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir. 1997); see

16

also <u>Parker v. Verizon Pa., Inc.</u> 309 F. App'x 551, 559 (3d Cir. 2009).

Here, the first <u>Ryder</u> factor weighs in favor of finding these stray remarks probative of discrimination.  Ms. Guzzardo was, at times, Plaintiff's interim supervisor when Ms. Gusenko was out of the office.  Gusenko Dep. 14:14-17.  Moreover, Plaintiff's testimony also states that either Ms. Gusenko or Ms. O'Connell, Plaintiff's direct supervisor and the head of human resources, respectively, called Plaintiff a "nigger."  Thus, as all of the alleged speakers of the word "nigger" were in a supervisory role to Plaintiff, this <u>Ryder</u> factor weighs in Plaintiff's favor.

The second <u>Ryder</u> factor also weighs in Plaintiff's favor.  Use of a racially charged word such as "nigger" in the process of disciplining or berating someone suggests racial animus.  Thus, this <u>Ryder</u> factor weighs in Plaintiff's favor.

The third <u>Ryder</u> factor also weighs in Plaintiff's favor.  Two of the alleged utterances of "nigger" occurred in March 2010 and May 2010.  Plaintiff's official termination date was May 11, 2010.  At the very least, Plaintiff's testimony that "nigger" was uttered during the May 3, 2010, meeting shows a close proximity to her termination.  Accordingly, this factor also weighs in Plaintiff's favor.

Given the stray remarks allegedly made, Plaintiff has shown sufficient evidence from which a fact finder could reasonably "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Iadimarco, 190 F.3d at 165-66.  In this case, Plaintiff adduced sufficient evidence for a fact-finder to reasonably disbelieve Defendants' proffered legitimate nondiscriminatory reasons for her termination and to believe that invidious discrimination was more likely than not the reason for her termination.  Accordingly, the Court will deny Defendants' Motion for Summary Judgment on Plaintiff's discrimination claim.

### 2.   Retaliation Claim

To prevail on a claim for retaliation, "an employee must prove that (1) she engaged in a protected employment activity, (2) her employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a 'causal link' exists between the adverse action and the protected activity."  Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007) (citation and internal quotation marks omitted).

And, similar to a claim of discrimination, after Plaintiff establishes her prima facie case, the burden shifts to Defendants to proffer a legitimate non-retaliatory reason for

18

the adverse employment action.  Estate of Olivia ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010).  If Defendants proffer such evidence, the burden shifts back to Plaintiff to show that Defendants' proffered reason is pretext.  Id.

Defendants concede, for argument purposes, that Plaintiff established her prima facie case on her retaliation claim.  Moreover, Defendants do not put forth additional evidence, other than the evidence discussed above, of a legitimate non-retaliatory reason for terminating Plaintiff.

Plaintiff, in addition to attacking the credibility of Defendants' reasons for terminating her, also argues that the temporal proximity between Plaintiff notifying Defendants that she planned to file an EEOC charge and her termination demonstrates pretext.  In this regard, Plaintiff testified that she informed her supervisor, Ms. Gusenko, at a meeting in early April 2010 that she planned to file a complaint with the EEOC. Williams Dep. 286:18-287:7.  Moreover, she did file this complaint with the EEOC on April 26, 2010.  See U.S. Equal Employment Opportunity Commission Intake Questionnaire (April 26, 2010), Pl.'s Br. Ex. H.  Defendants terminated Plaintiff following a purported performance meeting on May 3, 2010. Plaintiff argues that the short time between Plaintiff informing Ms. Gusenko about her intent to file the EEOC charge and her termination illustrates pretext.

19

In this case the temporal proximity of Plaintiff's protected activity and her termination suggests retaliation, and a jury could infer that Plaintiff's termination was retaliatory. The Court may consider the temporal proximity of a protected act to an adverse employment action when assessing a plaintiff's retaliation case.[6]  See Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005) (holding that "when only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision" there is evidence for an inference of retaliation).  Here, Defendants terminated Plaintiff approximately one month after Plaintiff informed Ms. Gusenko that she was filing a charge with the EEOC.  Moreover, Defendants terminated Plaintiff fifteen days after she filed a charge of discrimination with the EEOC.  Such temporal proximity combined with Plaintiff's earlier evidence refuting Defendants' proffered reasons for termination — falsifying mileage reports and patient records — is sufficient for a jury to conclude that

---

[6]     To consider temporal proximity, Plaintiff must show that the "decision maker had knowledge of the protected activity."  Moore v. City of Phila., 461 F.3d 331, 351 (3d Cir. 2006).  In this case, the record is unclear whether Defendants knew that Plaintiff actually did file a charge with the EEOC.  Nonetheless, Plaintiff testified that she informed Ms. Gusenko, her direct supervisor and a person responsible for terminating Plaintiff, that she planned to file a charge with the EEOC.  Thus, at least according to Plaintiff, Defendants were on sufficient notice of a protected activity.  See Oliver v. Bell Atl. Corp., No. 92-751, 1994 WL 3515829, at *2 (E.D. Pa. 1994) (Robreno, J.).

Defendants' legitimate non-retaliatory reasons for Plaintiff's termination were only pretext.[7]  Accordingly, the Court will deny Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim.

###   3.   Hostile Work Environment

Plaintiff also claimed that Defendants subjected her to a hostile work environment.  The standard for a hostile work environment claim under § 1981 is the same as under Title VII. Cf. Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment," a hostile work environment exists and Title VII has been violated.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted).

In order to make out a prima facie case for a hostile work environment, Plaintiff must demonstrate the following five

---

[7]      The case law generally analyzes temporal proximity in the context of whether a plaintiff met its burden for its prima facie case.  See, e.g., Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 369 (3d Cir. 2008); Fasold, 409 F.3d at 189-90.  Here, Defendants concede that Plaintiff met her prima facie case. Yet, "evidence supporting the prima facie case is often helpful in the pretext stage."  C.A.R.S., 527 F.3d at 370 (emphasis in original).  Thus, the Court finds that Plaintiff's evidence of temporal proximity, combined with her other evidence discussed above, is sufficient to defeat Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim.

elements: (1) that she suffered intentional discrimination because of her race; (2) that this discrimination was severe or pervasive; (3) that the discrimination detrimentally affected Plaintiff; (4) that it would detrimentally affect a reasonable person of Plaintiff's race; and (5) that there exists respondeat superior liability.  Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 267 (3d Cir. 2001).  Yet, not all conduct is actionable under a hostile work environment claim.  "The discriminatory conduct must be so extreme as to amount to a change in the terms and conditions of employment.  Unless they are extremely severe, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim."  Woodard v. PHB Die Casting, 255 F. App'x. 608, 609 (3d Cir. 2007) (citations omitted).

In this case, Defendants only challenge the second prong in their Motion for Summary Judgment — that the record does not reflect severe or pervasive discrimination.[8]

_____

[8]   Defendants do not argue that because Plaintiff's direct supervisor, Ms. Gusenko, did not make all of the alleged racially charged comments that Plaintiff cannot show grounds for respondeat superior liability.  Plaintiff, on the other hand, cites to the recent Supreme Court case of Staub v. Proctor Hosp., 131 S. Ct. 1186 (2011), for the position that an employee's harassing conduct can result in a hostile work environment under the so-called "cat's Paw" theory.  The Court takes no position on either issue, as Defendants only argued that the comments taken as a whole were insufficient as a matter of law to result in a hostile work environment.

Specifically, Defendants contend that any racially discriminatory statements made were few and sporadic. That is, there were only five specific racially charged comments in the record to support Plaintiff's claim of hostile work environment. Those statements were: (1) that Ms. Guzzardo called herself a "Guido" during a March 2010 telephone conversation with Plaintiff; (2) that Ms. Guzzardo called Plaintiff a "coon" and a "nigger" in the same conversation; (3) that Ms. Guzzardo called Plaintiff a "nigger" in a telephone conversation in 2009; (4) that Ms. Bullard told Plaintiff and another African-American employee that "you people cannot just be lazy" in 2008; and (5) that Ms. Gusenko or Ms. O'Connell called Plaintiff a "nigger" in the May 3, 2010 termination meeting. <u>See</u> Defs.' Br. 22 (citation omitted). Even assuming these comments are the only ones that support Plaintiff's claim for a hostile work environment, the Court will deny Defendants' Motion.[9]

When analyzing whether conduct is severe or pervasive, the Court looks not to one incident, but to the "totality of the

---

[9]     The Court already concluded that these stray remarks were probative of discrimination for Plaintiff's claims of discriminatory termination and retaliatory termination. <u>See</u> <u>supra</u>, at III(B)(1)(c). That does not, <u>ipso</u> <u>facto</u>, require the Court to deny summary judgment on Plaintiff's claim of a hostile work environment. Claims of discrimination or retaliation and hostile work environment are different and require Plaintiff to prove different elements. Any other conclusion would render claims for a hostile work environment superfluous. <u>Cf.</u> <u>Nat'l</u> <u>R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 115-16 (2002); <u>Kilby-Robb v. Spellings</u>, 522 F. Supp. 2d 148, 164 (D.D.C. 2007).

circumstances." <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1482 (3d Cir. 1990). In this case, it is true that these comments were sporadic. Moreover, while this Court has held that isolated and sporadic comments will not constitute a hostile work environment claim as a matter of law, <u>see</u> <u>Clair v. Agusta Aerospace Corp.</u>, 592 F. Supp. 2d 812, 822-23 (E.D. Pa. 2009) (Robreno, J.), this case is different. The alleged use of the word "nigger" on three occasions, combined with Defendants other alleged discriminatory remarks is insufficient for the Court to conclude that the alleged discriminatory conduct was not severe or pervasive as a matter of law.[10] "Nigger" is a word steeped in racial animus and instantly separates an African-American from

---

[10] It is true that other courts have held a similar number of racial remarks sufficient to conclude as a matter of law that the discriminatory remarks were not severe or pervasive. <u>See</u> <u>Woodard</u>, 255 F. App'x. at 609-10 (granting summary judgment because drawing of a burning cross and KKK sign on a restroom was not removed by the defendants for three months after the plaintiff complained); <u>Boyer v. Johnson Matthey, Inc.</u>, No. 02-8382, 2005 WL 35893, at *16-17 (E.D. Pa. Jan 6, 2005) (granting summary judgment after the plaintiff was called "boy" several times and the term "nigger-rigged" was used in the plaintiff's presence, but not directed at him); <u>Morgan v. Volenti Mid-Atl. Mgmt.</u>, No. 01-134, 2001 WL 1735260, at *3 (E.D. Pa. Dec. 14, 2001) (holding that there was no hostile work environment when employer called the plaintiff a nigger once and said that he would not hire Jamaicans again). The Court finds the repeated use of the uniquely racially charged remarks here distinguishable. In this case, Ms. Guzzardo, Plaintiff's interim supervisor, and either Ms. Gusenko or Ms. O'Connell, made the racially charged comments. Moreover, one of the uses of "nigger" allegedly occurred during Plaintiff's performance meeting on May 3, 2010, where Defendants decided to terminate Plaintiff, effective May 11, 2010.

everyone else.  Thus, the Court cannot say as a matter of law that Defendants' alleged conduct here was not severe or pervasive to the extent that it changed the terms of Plaintiff's employment.  Indeed, it is difficult for the Court to understand how the use of the word "nigger," with its history of animus, would do anything but change Plaintiff's terms of employment. See Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment [] than the use of an unambiguously racial epithet such as nigger by a supervisor in the presence of his subordinates.")  (citation and internal quotation marks omitted); cf. Webb v. Merck & Co., 450 F. Supp. 2d 582, 598 (E.D. Pa. 2006) (denying summary judgment on hostile work environment claim where the defendant's employee called the plaintiff an animal and the employee referred to himself as the zookeeper).  Accordingly, under the totality of the circumstances and viewing the facts in the light most favorable to Plaintiff, there is sufficient evidence for a reasonably jury to conclude that Defendants' conduct was severe or pervasive. Accordingly, the Court will deny Defendants' Motion for Summary Judgment on Plaintiff's hostile work environment claim.

## IV.   CONCLUSION

For the reasons set forth above, the Court will deny Defendants' Motion for Summary Judgment.  An appropriate order will follow.